NOT DESIGNATED FOR PUBLICATION

No. 116,239

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
I.S., S.L'D.S., and S.E.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed April 7, 2017. Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant natural father.

*Ashley Hutton*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: Father appeals from the district court's order terminating the parental rights of Father and Mother to three children. Mother has not appealed. The district court found Father was unfit, his unfitness was unlikely to change in the foreseeable future, and termination of parental rights was in the children's best interests. Father contends the district court's findings were not supported by sufficient evidence. But viewing the evidence in the light favoring the prevailing party below, as we must, we find sufficient evidence supporting the district court's decision. Accordingly, we affirm.

*CINC and pretermination proceedings*

In August 2014, the State sought to have I.S. declared a child in need of care. The district court found that Mother continued to use drugs despite receiving services, and

1

Father was not in a position to parent I.S. Father, Mother, and the guardian ad litem subsequently stipulated that I.S. was a child in need of care (CINC), and the court so found. The district court ordered a case plan of reintegration.

In June 2015, the State sought to have S.L'D.S. and S.E.S. declared CINC. Before a hearing on that issue, however, the district court issued an ex parte order of protective custody for S.L'D.S. and S.E.S. The district court found that Mother did not comply with the court orders and Father was in jail. The district court placed the children in protective custody and scheduled a first hearing.

*The termination of parental rights*

In December 2015, the State filed a motion to terminate Father's and Mother's parental rights to all three children. We summarize the 2 days of testimony below.

Meghan Clothier, social worker specialist for the Department for Children and Families (DCF), testified that she did an investigation after S.L'D.S. and S.E.S. were placed in protective custody. Clothier spoke with Father in the county jail, and he told her that he was in jail for failing to register as a sex offender after moving. Father admitted that he had been diagnosed with bipolar disorder and schizoaffective disorder and that he was no longer taking medication because he did not feel like it was necessary. Clothier said that Father had not completed the court orders yet and his mental health was a concern. Additionally, Clothier was concerned that Father's brother, who was also a sex offender, was living in the home with S.L'D.S. and S.E.S.

Samantha Broz, Kaw Valley Center case manager, was in charge of the case from August 28, 2014, to September 25, 2015. Father attended 11 out of 55 visitations during that time. Father was visibly excited when he showed up to visit with his children. Broz felt that Father had the skills to care for a young child, and he did positive things such as

2

reading to them, encouraging them to play with each other, and making sure they did not hurt each other. Broz reported that the only urine sample that she was able to obtain from Father was negative for drugs and alcohol.

Broz also reported, however, that Mother and Father would bicker in front of the children about how to handle the children's behaviors. She said Father's visitations with his children were inconsistent because at times she could not reach Father due to his incarceration or because his phone was disconnected. Broz also reported that Father would fail to show up to scheduled visits. Father never provided Broz with verification of stable housing, income, parenting classes, a drug and alcohol assessment, a domestic violence assessment, or a mental health assessment. She was confident that Father understood the court orders.

Lisa Johnson took over as case manager after Broz. She described a visit in which Father became upset that S.L'D.S. referred to his foster mother as "mommy." Johnson described Father as "loud, stern, to the point where [S.L'D.S.] was crying." The visit had to be stopped so that S.L'D.S. could calm down. Johnson explained to Father that his response was inappropriate.

According to Johnson, Father missed 8 of 26 scheduled visits while she supervised the case. Father would get angry at times when the subject of termination of parental rights was brought up. Visits remained supervised because the parents were inconsistent and did not have reasonable expectations of the children.

Father provided some pay stubs to Johnson to verify his income, but he did not submit additional verification after changing jobs. Johnson was provided a copy of a lease with the parents' names on it, but she remained concerned about compliance with the order for stable housing. Father had not completed his parenting classes as ordered by the court. Father completed a mental health assessment, but it recommended that he

3

receive treatment for anger management, couples' therapy, and individual counseling; and Father failed to provide documentation that he completed any of those recommendations. Father also failed to provide documentation that he completed a domestic violence assessment. Johnson testified that both parents have inconsistent parenting skills and a lack of family support. The parents had failed to provide consistent living accommodations for the children, and Johnson did not believe that would change in the immediate future. Johnson expressed concern about the parents' ability to care for and meet the needs of the children.

Ramona MacDougall, a court services officer who was assigned to the case from its inception, testified that Father had a year and a half to meet a number of tasks for reintegration, but he did not complete them. For example, when MacDougall testified on March 29, 2016, she stated that Father:

- failed to complete regular drug tests;
- failed to maintain contact once a month with the court services officer;
- did not provide proof of taking parenting classes; and
- failed to follow through with mental health recommendations, such as anger management, individual counseling, and a domestic violence assessment.

MacDougall testified that Father provided a certificate of completion for 6 of the 18 required hours of parenting class. She believed Father may not meet the tasks even if he had another year and a half for completion. She recommended termination because it was in the best interests of the children when she considered the amount of time the children had been in custody and the amount of tasks the parents had failed to complete.

LaShante Harris, community corrections intensive supervision officer for Father, testified that Father's probation had been extended because he had missed five urinalysis tests within the past year. Father had not provided verification of completing his community service hours and was not making consistent payments on his outstanding court fees.

Father testified that he had been diagnosed with bipolar disorder and schizoaffective disorder, but he stopped taking his medication because it made him "angrier" and messed with his body. Father claimed he has mood swings and gets angry because "I can't stand stupid stuff." Father explained that he gets "angry when somebody is doing something intentionally when they know different than what they doing." Father denied needing treatment or therapy for anger issues. Father admitted that he failed to complete the domestic violence assessment as ordered by the court.

Father said that he missed visits with his children because he was taking care of the requirements for the offender registry and trying not to go back to jail. Father admitted that he failed to complete the 12 hours of parenting classes but stated that he did attend 6 hours of classes. Father confirmed that when S.L.'D.S. and S.E.S. were taken into protective custody, they were found with his mother and his brother, who was also a convicted sex offender. Father also stated that even though he had been employed full-time for the last 16 months, he had paid only about $7 a month on his outstanding court costs, and he felt that was the best that he could do to resolve those legal matters.

The district court found S.L'D.S. and S.E.S. to be CINC and then terminated Father's parental rights to all three children. Father appeals, contending that the district court's findings were not supported by clear and convincing evidence.

*Our legal framework*

A parent has a constitutionally protected and fundamental liberty interest in the relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Thus the State may terminate one's parental rights only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute lists nine factors that singularly or in combination would amount to unfitness, and four other factors for the court to consider if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(b), (c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record viewed in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved in favor of the State.

Having found unfitness, the district court must then determine whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g)(1). The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews that decision only for abuse of discretion. A district court exceeds that

6

broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106; *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*We find termination was supported by the evidence*

Father challenges the district court's finding that he was unfit. But Father cites no caselaw supporting his assertion and essentially invites this court to reweigh the evidence.

Father points to evidence in the record that he had the skills required for parenting his children. Father acknowledges that he did not complete the domestic violence evaluation and anger management treatment, but he claims he never lost his temper with the children and he never hurt them. Father notes that he was no longer in a relationship with Mother, and no evidence of domestic violence was presented by the State. Father also minimizes the district court's concern that a sex offender was caring for the children, noting that Clothier testified she never asked about and never saw any evidence that a sex offender lived with the children. But in making that argument, Father ignores his own testimony that his children were found with his brother, a sex offender, and were taken into protective custody.

We find the following factors sufficient to uphold the district court's termination of Father's parental rights.

*Emotional or Mental illness, or Mental Deficiency of Father—K.S.A. 2016 Supp.*
*38-2269(b)(1)*

Father eventually completed the mental health assessment ordered by the court, but he failed to follow any of the recommendations for treatment despite the fact that there was an existing court order requiring his participation in mental health services. Father was recommended to participate in individual therapy, couples therapy, and anger management. The district court found that the mental health assessment completed by Father "highlight[ed] a lot of problems." The court expressed concern that Father had stopped taking prescribed medication and had not completed any therapy or treatment for his anger issues and other mental health concerns.

Father admitted that he had been diagnosed with bipolar disorder and schizoaffective disorder and admitted he did not take his medication or continue treatment for his mental health issues because he did not believe he needed it. But Johnson's testimony illustrates that Father does not have his anger under control. She described a visit in which Father became very angry when S.L.'D.S. referred to his foster mother as "mommy," and the visit had to be stopped so that S.L.'D.S. could stop crying and calm down. Johnson also testified that Father would get angry at times when the subject of termination of parental rights was brought up. Father was unwilling to follow the recommendations for mental health services, despite knowing that his participation in these services was required by the reintegration plan.

*Failure of Reasonable Efforts—K.S.A. 2016 Supp. 38-2269(b)(7); Failure to*
*Carry Out a Reasonable Plan—K.S.A. 2016 Supp. 38-2269(c)(3)*

Father was given a list of court orders that remained virtually unchanged for approximately a year. Father was given ample time and resources to complete these tasks, but Father failed to complete many of them. Accordingly, the district court found there

8

was a failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family. Father did not complete many of the key requirements in his reintegration plan, such as providing a stable address, attending parenting classes, and following mental health recommendations for treatment. Father did not participate in individual counseling or attend a domestic violence assessment. Father failed to attend the required number of parenting classes or submit to routine drug testing. Father failed to consistently visit the children even when he was not in jail. The record thus supports the finding that despite having a reintegration plan, Father failed or refused to participate in the services offered to him. The district court's finding was supported by the testimony of the caseworkers and the social workers, as well as Father's own admissions that he failed to meet the requirements of the reintegration plan.

Father testified that he did not have an excuse for why it had taken him more than a year to complete a mental health assessment. He stated the reason that he missed some visits with his children was because he was taking care of the registration requirements and trying to avoid going back to jail. Father never completed a domestic violence assessment, and he could not give a reason as to why he missed the appointment. Father had more than a year to complete the tasks as ordered by the court in order to be able to meet the needs of his children, but he neglected to do so.

*Lack of Effort on Part of Parent—K.S.A. 2016 Supp. 38-2269(b)(8)*

At trial, much of the evidence presented by the State focused on Father's failure to comply with the majority of the tasks required by the reintegration plan. Father provided little explanation or excuse for his failure to complete the tasks assigned to him for the purpose of reintegration. Father claimed that he was hampered by the requirements of registration and his efforts to stay out of jail but offered no details or reasons supporting that conclusory allegation.

9

Father points to evidence in support of his position that he was a fit parent, and there is some evidence in his favor, but it is not our role to reweigh the evidence, and we must view the evidence in favor of the prevailing party. Accordingly, we find clear and convincing evidence in the record supporting the district court's determination that Father's conduct or condition rendered him unfit to care properly for his children.

*Conduct is unlikely to change in the foreseeable future*

We next determine whether clear and convincing evidence supports the district court's ruling that Father's behavior was unlikely to change in the foreseeable future. See K.S.A. 2016 Supp. 38-2269(a). The foreseeable future in CINC proceedings is viewed from a child's perspective because a child's perception of time differs from that of an adult. K.S.A. 2016 Supp. 38-2201(b)(4); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014); *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790. In addition, the court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Courts do not have to gamble with the children's future nor experiment with the children's welfare before taking action. A child should not have to endure the inevitable to his or her detriment in order to give the parent an opportunity to prove his or her fitness as a parent. 7 Kan. App. 2d at 480 (quoting *In re East*, 32 Ohio Misc. 65, 69, 288 N.E.2d 343 [1972]).

I.S. was placed in custody after birth, and she had been in custody for 18 months at the time of the termination hearing. S.L.'D.S. and S.E.S. were placed in custody later, but they had been in custody for 9 months as of that date. MacDougall expressed concern about Father's progression on the reintegration plan and expressed a need for permanency for the children. MacDougall felt as though Father may not meet the tasks even if he had another year and a half for completion. Johnson testified that she did not foresee Father

10

being more stable for at least another year. The district court considered the progress of Father and the amount of time the children had been in custody and concluded that "too much time ha[d] gone by" without progress. The district court judge indicated that if he "thought that there was something in this case that would resolve itself in a meaningful time for these kids from here on out, I would look favorably on the parents." But the court stressed the significance of giving the children permanency, and Father had not shown that he was going to be in a position to provide for his children within a meaningful time for them. Father does not dispute that he did not complete the majority of the tasks requested of him in the district court's order. After the State moved to terminate Father's parental rights, he made little to no progress toward reintegration. We find clear and convincing evidence supporting the district court's determination that Father's unfitness was unlikely to change in the foreseeable future.

*Termination is in the best interests of the children*

Finally, we consider Father's challenge to the district court's finding that terminating his parental rights was in the children's best interests. See K.S.A. 2016 Supp. 38-2269(g)(1). The district court is in the best position to determine the best interests of the children, and an appellate court cannot overturn it without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). The party asserting an abuse of discretion bears the burden to prove the abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. at 935.

In making a determination of the best interests of the child, "the court shall give primary consideration to the physical, mental, and emotional health of the child. If the physical, mental, or emotional needs of the child would be best served by termination of parental rights, the court shall so order." K.S.A. 2016 Supp. 38-2269(g)(1). See *In re K.R.*, 43 Kan. App. 2d 891, 903, 233 P.3d 746 (2010). The court should weigh the benefits of permanency for the children without the presence of a parent against the

11

continued presence of the parent and the attendant issues created in the children's lives. The court should further consider the relationship between the parent and children and the trauma that may be caused by termination. 43 Kan. App. 2d at 904.

Father failed to establish stable housing, participate in mental health services, take care of his legal issues, comply with court orders for drug testing, and participate in a domestic violence assessment. The court was primarily concerned with Father's lack of care for his own mental health and his lack of progress on his reintegration plan. Father argues that termination of his rights was not in the children's best interests because he loved his children and maintained contact with them. Even if Father does love his children and maintained some contact with them, we find no abuse of discretion in the district court's finding that it was in the best interests of the children to terminate Father's parental rights.

Affirmed.